UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANDREW E. ROTH on behalf of :
ALTICE USA, INC., :
 :
                            Plaintiff, :
 :
                 -against- : **MEMORANDUM AND ORDER**
 : 23-cv-5522 (DLI) (SJB)
PATRICK DRAHI, NEXT ALT S.a.r.l., BIDFAIR :
LUXEMBOURG S.a.r.l., ALTICE UK S.a.r.l., and :
UPPERNEXT S.C.S.p., :
 :
                           Defendants, :
 :
ALTICE USA, INC., :
 :
                    Nominal Defendant. :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On July 20, 2023, Plaintiff Andrew E. Roth ("Plaintiff"), on behalf of nominal Defendant Altice USA, Inc. ("Altice"), filed this private securities action against Defendants Patrick Drahi ("Drahi"), Next Alt S.a.r.l. ("Next Alt"), Bidfair Luxembourg S.a.r.l. ("Bidfair"), Altice UK S.a.r.l. ("Altice UK"), and UpperNext S.C.S.p. ("UpperNext"; collectively, "Defendants") to recover profits received by Defendants for alleged violations of Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b) ("Section 16(b)"). *See*, Compl., Dkt. Entry No. 1. Defendants moved to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See*, Mot., Dkt. Entry No. 16. Plaintiff opposed. *See*, Opp'n to Mot. ("Opp'n"), Dkt. Entry No. 23. Defendants replied. *See*, Reply, Dkt. Entry No. 25. Defendants subsequently filed a notice of supplemental authority. *See*, Defs.' Suppl. Letter, Dkt. Entry No. 26. Plaintiff replied. *See*, Pl.'s Reply to Suppl. Letter, Dkt. Entry No. 27. For the reasons set forth below, the motion to dismiss is granted with

prejudice.

## BACKGROUND[1]

Plaintiff is a shareholder of Altice, a Delaware corporation. *See*, Compl. ¶ 1; Mot. 4. Drahi is a director and controlling shareholder of Altice and owns or controls the other Defendant entities: Next Alt, Bidfair, and Upper Next, which are Drahi's personal holding companies, and Altice UK, of which Drahi owns 90 percent. *See*, Compl. ¶¶ 3-6, 13; Mot. 3. Defendants own approximately 49.6% of Altice. *See*, Compl. ¶ 17; Mot. 4; Opp'n Ex. 3, Page ID No. 142.

From March through August 2021, Altice and Defendants each sold or purchased Altice shares.[2] In March 2021, Altice repurchased 6,766,190 of its own shares at an average price of $33.81 per share. Compl. ¶ 16. On May 25, 2021, Defendants sold a total of 3,910,161 shares at $37.21 per share, which they reported in a Form 4 filed with the Securities and Exchange Commission ("SEC") on May 27, 2021. Mot. 3; Compl. ¶ 14. In July 2021, Altice repurchased 670,885 shares at an average price of $31.23, and, in August 2021, repurchased 1,921,894 shares at an average price of $30.42 per share. Compl. ¶ 15. Plaintiff does not allege that Defendants directly purchased any shares or that Altice directly sold any shares during this period.

Plaintiff alleges that Defendants' ownership interest in Altice makes them statutory insiders owing fiduciary duties to Altice not to engage in short swing transactions prohibited under Section 16(b). *See*, Compl. ¶ 12. He further alleges that, as controlling shareholders, Defendants had the opportunity to profit from the sale of shares in May relative to Altice's repurchases in March, July, and August. Compl. ¶ 17. As these trades occurred within six months of each other, Plaintiff

---

[1] The following facts are taken from the Complaint and any documents of which the parties are presumed to have knowledge of and are accepted as true as they must at this stage of the case.

[2] The Court adopts the parties' use of the terms "stocks" and "shares," used interchangeably, which refer to Altice Class A common stock, the only security at issue in this case.

claims that they constituted short swing transactions in violation of Section 16(b), and Altice is entitled to recovery of Defendants' realized profit. *See generally*, Compl. On February 14, 2023, Plaintiff, as a shareholder, made a demand on Altice to commence this lawsuit. Compl. ¶ 29. On March 24, 2023, Altice's counsel advised Plaintiff that Altice would not take any action. *Id.* On July 20, 2023, Plaintiff commenced this action.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Pleadings that are no more than conclusions are not entitled to the assumption of truth.") (internal quotation marks and modifications omitted). The court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010).

**DISCUSSION**

Defendants move to dismiss for failure to state a claim, contending that: (1) issuer repurchases of stock are not within the scope of Section 16(b); (2) Defendants did not engage in matching purchases following their sales, nor do they have a "pecuniary interest" in Altice's repurchase of the shares; (3) Defendants did not realize any profits; and (4) Plaintiff's theory of liability would conflict with existing securities regulations and produce "absurd results." Plaintiff counters that Defendants' control and ownership of Altice creates an indirect pecuniary interest in Altice's share repurchases and, thus, the series of trades are short swing transactions for which Defendants are liable.

**I.    Section 16(b)**

Under Section 16(b), "any profit realized by [a director, officer, or beneficial owner of an issuer] from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months . . . shall inure to and be recoverable by the issuer . . . ." 15 U.S.C. § 78p(b). Congress prohibited these "short swing transactions" in order to "prevent[ ] the unfair use of information" by corporate insiders. *Id*; *See also*, *Adler v. Klawans*, 267 F.2d 840, 844 (2d Cir. 1959) ("This makes plain the intent of Congress to reach a 'purchase and sale' or 'sale and purchase' within a six month [sic] period by someone within one of the proscribed categories, *i.e.*, one who was a director, officer or beneficial owner at some time."). Liability attaches when there is "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998).

For purposes of short swing transactions, the SEC defines a beneficial owner as "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities." 17 C.F.R. § 240.16a-1(a)(2). "The term pecuniary interest in any class of equity securities shall mean the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." 17 C.F.R. § 240.16a-1(a)(2)(i). "[I]ndirect pecuniary interests are sufficient to establish . . . the potential for short-swing profit recovery with respect to those securities.'" *Feder v. Frost*, 220 F.3d 29, 34 (2d Cir. 2000) (citing Exchange Act Release No. 34–26333, 53 Fed. Reg. 49997, 50001 (Dec. 13, 1988)).

The rule provides a nonexhaustive list of examples of what constitutes "indirect pecuniary interest." For instance, there is a rebuttable presumption that one has an indirect pecuniary interest in securities held by an immediate family member sharing the same household. 17 C.F.R. § 240.16a-1(a)(2)(ii)(A). A person has an indirect pecuniary interest in securities held by a trust. 17 C.F.R. § 240.16a-1(a)(2)(ii)(E). An indirect pecuniary interest also arises based on a "general partner's proportionate interest in the portfolio securities held by a general or limited partnership." 17 C.F.R. § 240.16a-1(a)(2)(ii)(B). The rule is silent as to whether indirect pecuniary interest can be established by one's status in a corporation, such as by virtue of voting power or percentage of ownership.

## II.    Defendants' Indirect Pecuniary Interest

Plaintiff contends that Defendants had an indirect pecuniary interest in Altice's share repurchases that occurred within six months of Defendants' sales. Defendants oppose this interpretation of the statute and rule that would attribute the issuer's transactions to the insider.

5

The parties do not dispute that Drahi was and is a director and controlling shareholder of Altice, or that Defendants had a 49.6% share ownership in Altice.

A recent case from the U.S. District Court for the Middle District of Florida, addressed extensively by both parties, presents nearly identical facts and legal questions. *See*, *Roth v. Russell*, 2023 WL 6845502 (M.D. FL Oct. 17, 2023) (*Russell I*) (granting motion to dismiss); *Roth v. Russell*, 2024 WL 382602 (M.D. FL Feb. 1, 2024) (*Russell II*) (denying motion for reconsideration). The plaintiff in *Russell*, who is Plaintiff here, brought a Section 16(b) case against an insider who sold shares less than six months before the issuer repurchased shares. The plaintiff alleged that defendant had a 28.3% indirect pecuniary interest by virtue of his share ownership, and about 80% voting power of the outstanding stock. *Russell I,* at *1; *Russell II*, at *2. The *Russell* court noted that "the case presents the extraordinary situation in which the [Section 16(b)] plaintiff, on behalf of the company that issued the equity security, seeks to attribute to the insider a transaction conducted by that very company." *Russell I*, at *3. The court dismissed the case with prejudice because the issuer's repurchases cannot be attributed to the defendant. *Id.* at *5. The plaintiff appealed the decision to the Eleventh Circuit, where it is pending. *See*, *Roth v. Russell*, Case Dkt. No. 24-10448 (11th Cir. Feb. 13, 2024). Defendants urge the Court to follow *Russell*, which Plaintiff contends was decided incorrectly.

Plaintiff also commenced a nearly identical case in the U.S. District Court for the Southern District of New York, alleging the same theory of liability under Section 16(b) as in *Russell*. *See*, *Roth v. LAL Family Corp. et al*, 2024 WL 4149241 (S.D.N.Y. Sept. 10, 2024). That court also dismissed the complaint with prejudice, holding that the plain reading of Section 16(b), the SEC's

6

regulatory framework and practices, and key policy considerations preclude attribution of issuer share repurchases to insiders.[3]  *Id.*

Section 16(b) is a "blunt instrument" that Congress enacted to curb insider trading.  *Magma Power Co. v. Dow Chemical Co.*, 136 F.3d 316, 321 (2d Cir. 1998).  As such, the statute "imposes liability without fault within its narrowly drawn limits."  *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 251 (1976).  A court should consider the congressional purpose behind the statute when attempting to resolve ambiguity, but that "does not require resolving every ambiguity in favor of liability under [Section] 16(b)."  *Id.* at 252; *See also*, *Gwozdzinsky*, 156 F.3d at 310 ("[T]he [Supreme] Court, recognizing the overbreadth of Section 16(b), held that 'under the strict terms of Section 16(b), the prevailing view is to apply the statute only when its application would serve its goals.'" (quoting *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595 (1973)) (modifications omitted)).  Indeed, "[i]t is inappropriate to reach the harsh result of imposing [Section] 16(b)'s liability without fault on the basis of unclear language.  If Congress wishes to impose such liability, we must assume it will do so expressly or by unmistakable inference."  *Foremost-McKesson*, 423 U.S. at 252.

As did the courts in *Russell* and *LAL Family Corp.*, this Court declines to expand Section 16(b)'s liability such that an issuer's transactions are attributable to an insider, and vice versa.  As an initial matter, there is no dispute that Section 16(b) would have been triggered had any of the Defendants purchased shares within six months of their own sales, assuming no other exception or exemption would have applied.  *See*, Mot. 13 (conceding that "Plaintiff's 'pecuniary interest' theory might have held water if one of the entity Defendants had purchased Altice stock").

---

[3] Plaintiff has advised the Court that he has appealed the dismissal by the S.D.N.Y. court.  *See*, Dkt. Entry No. 31.  The Court declines the invitation to stay this case and withhold its determination of the motion to dismiss pending the outcome of the appeal given the reasoning set forth herein as in accord with *Russell* and *LAL Family Corp.*  Plaintiff is free to appeal this decision and move before the Second Circuit to join it with the pending appeal.

Defendants did not do so here. Instead, Plaintiff contends that the issuer's trades automatically equate to trades by Defendants by virtue of their position as controlling shareholders. *See*, Opp'n 13.

As the *Russell* court stated, Plaintiff's "theory of liability proves too much." *Russell I*, at *4. The theory would mean that every officer, director, or principal shareholder would have an indirect pecuniary interest in every transaction by the issuer, and, thus, they would be liable for all the issuer's transactions, even retroactively. *Id.* "This outcome seems unfair and likely to interfere with not only the insiders' but also their company's plans to buy and sell the company's stock." *Id*.; *See also*, *LAL Family Corp.*, 2024 WL 4149241, at *11 ("Expanding the statute in this manner could impose considerable burdens on corporate insiders even beyond the expansion of direct liability."). The Supreme Court has stated, "where alternative constructions of the terms of [Section 16(b)] are possible, those terms are to be given the construction that best serves the congressional purpose of curbing short-swing speculation by corporate insiders." *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 424 (1972).

"The undoubted congressional intent in the enactment of § 16(b) was to discourage what was reasonably thought to be a widespread abuse of a fiduciary relationship—specifically to discourage if not prevent three classes of persons [officers, directors, and 10% beneficial owners] from making private and gainful use of information acquired by them by virtue of their official relationship to a corporation." *Adler*, 267 F.2d at 844. Congress wanted to deter these types of insiders "from making improper use of information gained in a representative capacity." *Id.* Plaintiff's theory, that issuer transactions should be attributed to insiders, would extend Section 16(b) liability to the issuer itself, suggesting that a purpose of Section 16(b) is also to prevent an issuer from making improper use of its own information. Yet the issuer cannot misuse its own

8

information.  It cannot breach even a fiduciary relationship to itself.  *See*, *Buttonwood Tree Value Partners, L.P. v. R.L Polk & Co.*, 2014 WL 3954987, at *1 (Del. Ch. Aug. 7, 2014) ("A corporation owes no fiduciary duties to its owners, the stockholders, . . . nor can it aid and abet the fiduciary breaches of those who direct its operations.").

Furthermore, Altice's trades cannot be attributed to Defendants as a matter of black letter corporate law.  "[A] corporation and its controlling shareholder are distinct entities." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 58 (2d Cir. 2021).  Plaintiff implicitly seems to attempt to pierce Altice's corporate veil by conflating its trades with those of Defendants, but Plaintiff has not indicated that Altice's corporate form was being "misused to accomplish certain wrongful purposes," like fraud.  *See*, *United States v. Bestfoods*, 524 U.S. 51, 62 (1998).

In various contexts, the SEC has stated that issuers are not subject to Section 16(b)'s prohibitions.  Former Rule 16a-4(c) had exempted from Section 16(b) "[s]ecurities reacquired by or for the account of an issuer and held by it for its account."  *See*, Opp'n 23 n. 15.  As such, the SEC noted that, "[i]ssuer repurchases are exempt from the application of Sections 16(a) and 16(b) by virtue of Rule 16a-4."  *See*, *Interpretive Release on Rules Applicable to Insider Reporting and Trading*, 1981 WL 128863, 46 Fed. Reg. 48147-01, 48156 (Oct. 1, 1981).  "Imposition of the short-swing profit recovery provisions of Section 16(b) would be incongruous in this context, since the company would owe any profit to itself." *Id.* at n. 59.  The SEC subsequently deleted former Rule 16a-4(c) as unnecessary because "transactions by the issuer are not subject to section 16." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 1991 WL 311110, 56 Fed. Reg. 7242-01, 7261, 7263 (Feb. 21, 1991).

Congress or the SEC could have established this broad scope of liability in Section 16(b) or Rule 16a-1, yet, aside from the cases commenced by Plaintiff in *Russell*, *LAL Family Corp.*,

9

and here, the Court is not aware of any other case, rule, or legislation on this issue, suggesting this is not an area of potential or actual abuse.  Indeed, the SEC provided a nonexhaustive list of indirect pecuniary interests in Rule 16a-1(a)(2) that "are far more direct than the kind of interest Roth is relying on, and importantly none of the examples involve imputing a pecuniary interest to an insider based on transactions conducted by the issuer or transactions involving treasury shares." *LAL Family Corp.*, 2024 WL 4149241, at *7.  Notably, the SEC explicitly recognized an indirect pecuniary interest for a general partner's proportionate ownership of a general or limited partnership, but made no such rule for corporate insiders.  *See*, 17 C.F.R. § 240.16a-1(a)(2)(ii)(B).  A commentator noted that the *Russell* court's refusal to expand liability was "a *sensible acknowledgement* that the issuer's transactions should not per se be attributed to all its insiders for purpose of liability under 16(b)."  Donald C. Langevoort, *Insider Trading Regulation, Enforcement and Prevention* § 10:3 n. 1 (Apr. 2024) (emphasis added).  Like the courts in *Russell* and *LAL Family Corp.*, this Court is unwilling to expand the scope of Section 16(b) liability "absent any indication from Congress to the contrary." *Mercer v. Gupta*, 712 F.3d 756, 761 (2d Cir. 2013) (rejecting plaintiff appellant's attempt to broaden the application of Section 16(b) to tipper-tippee liability).

      Finally, the Court is concerned about the unintended consequences of an expanded theory of liability, but it need not address those hypothetical scenarios at this time.  As Defendants did not have an indirect pecuniary interest in Altice's purchases of its own shares, there is no corresponding purchase to their sales pursuant to 15 U.S.C. § 78p(b), and, thus, there is no realized profit that can be recovered.  Accordingly, Plaintiff has failed to state a claim.

## FUTILITY OF AMENDMENT

It is well established in this Circuit that a district court may preclude a plaintiff from filing an amended complaint when doing so is futile. *See*, *Liu v. Intercept Pharms., Inc.*, 2022 WL 2165621, at *4 (2d Cir. June 16, 2022). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Here, amendment would be futile because the core of Plaintiff's deficient theory of liability cannot be cured. *See*, *LAL Family Corp.*, 2024 WL 4149241, at *11.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted with prejudice and leave to amend the complaint is denied as futile.

SO ORDERED.

Dated: Brooklyn, New York
       September 16, 2024

/s/
DORA L. IRIZARRY
United States District Judge